NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-788

CLAUDE JOSEPH SANCHEZ, JR., ET UX.

VERSUS

JON PHILLIP BLADEL, ET AL.

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 233,954
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy Howard Ezell, Judges.

AFFIRMED.

Ricky L. Sooter
Provosty, Sadler, deLaunay, Fiorenza & Sobel
P. O. Box 1791
Alexandria, LA 71309-1791
Telephone: (318) 445-3631
COUNSEL FOR:
    Plaintiffs/Appellees - Claude Joseph Sanchez, Jr. and Jane Ellen Moreno Sanchez

Thomas D. Davenport, Jr.
The Davenport Firm, APLC
1628 Metro Drive
Alexandria, LA 71301
Telephone: (318) 445-9696
COUNSEL FOR:
    Defendants/Appellants - Bladel Enterprises, L.L.C., Bladel Homes, L.L.C., and Jon Phillip Bladel

**THIBODEAUX, Chief Judge.**

Claude Joseph Sanchez, Jr. and Jane Ellen Moreno Sanchez sued Jon Phillip Bladel and his corporations, Bladel Homes, L.L.C. and Bladel Enterprises, L.L.C. (collectively "Bladel"), [1] for damages, return of unlawful real estate commissions, and attorney fees. Specifically, the Sanchezes argued that by marketing their home for sale and by selling them another home, Bladel engaged in real estate activity without a license and unlawfully received commissions as a result of those transactions. They also alleged that Bladel's actions violated the Louisiana Unfair and Deceptive Trade Practices Law ("UTPL").

The trial court agreed with the Sanchezes and awarded them $17,500.00 in damages and $4,500.00 in attorney fees. Bladel now appeals and asserts four assignments of error: (1) the trial court committed legal error by ignoring the ownership interest held by Bladel in the form of an Option to Purchase; (2) the trial court committed legal error by concluding a party to an Option to Purchase cannot sell his ownership interest without a real estate license; (3) the trial court committed legal error when he ordered Bladel to return the proceeds from selling and leasing their ownership interest; and, (4) the trial court committed legal error by awarding attorney fees when the evidence established the Sanchezes have not paid attorney fees and there was no legal basis to award those fees. For the following reasons, we affirm.

I.

## ISSUES

We must decide whether:

---

[1] The record indicates that, in all transactions relevant to this matter, Jon Bladel acted as either the agent and/or the alter ego of Bladel Homes, L.L.C. and Bladel Enterprises, L.L.C. Thus, we refer to Appellants collectively as "Bladel."

(1)     Bladel's Option to Purchase resulted in an ownership interest in the Sanchezes' property;

(2)     Bladel engaged in real estate activity without a license;

(3)     the trial court erred in awarding damages; and,

(4)     the trial court erred in awarding attorney fees.

## II.

## FACTS AND PROCEDURAL HISTORY

Ms. Sanchez and her son, Michael Jason Hall, owned a home in Glenmora, Louisiana. While driving to work, Mr. Hall noticed a "for sale" sign at a home located in Oberlin, Louisiana. The Oberlin property was offered for sale by Bladel. The Sanchezes contacted Bladel about their desire to sell the Glenmora property and purchase the Oberlin property.

In anticipation of selling the Glenmora property, Bladel photographed the Glenmora property and placed the photographs on the company's website as a property "for sale." Shortly thereafter, Bladel presented Ms. Sanchez with several documents for signature. Specifically, Bladel drafted, and requested Ms. Sanchez sign, an "Option to Purchase" the Glenmora property for $65,000.00. Bladel informed Ms. Sanchez that the "Option to Purchase" was a standard form he used when he surveyed potential properties. At Bladel's request, Ms. Sanchez also completed a form entitled "Title Search Info," and she disclosed to Bladel that Mr. Hall possessed an ownership interest in the property. Ms. Sanchez signed a document entitled "Home Information Sheet" as well as a "Contract to Buy and Sell." Ms. Sanchez testified that the "Contract to Buy and Sell" was blank when she signed it, and Bladel filled in the blanks later.[2] The completed Buy/Sell Contract listed the purchase price of the Glenmora property as $97,000.00. Ms.

---

[2]At no time did Bladel possess a power of attorney on behalf of the Sanchezes. Thus, Bladel had no authority to complete the contract.

Sanchez testified that Bladel never informed her that he had located a buyer for the Glenmora property or that the sales price for the property was $97,000.00. Moreover, she testified that she only learned about the closing on the Glenmora property when an agent from New Directions Mortgage called and informed her of the closing date.

Prior to the closing, Ms. Sanchez understood that part of the proceeds of the sale of the Glenmora property would be applied to the purchase price of the Oberlin property. To that end, she signed a document entitled "Allocation of Sale Proceeds."

While negotiating the sale of the Glenmora property, Bladel also negotiated the sale of the Oberlin property. Bladel presented, and the Sanchezes signed, a "Lease Agreement with Option to Purchase" the Oberlin property. Ms. Sanchez testified that she understood that she and her husband would rent the Oberlin property for one year with an option to purchase the property at the end of the one-year term. The sales price for the Oberlin property was $180,000.00. The Sanchezes gave Bladel a down payment of $9,000.00, and they gave him six post-dated rent checks, each in the amount of $1,600.11. Shortly after signing the "Lease Agreement with Option to Purchase," the Sanchezes began residing at the Oberlin property. Two months later, the sale of the Glenmora property was finalized.

Following the sale of the Glenmora property, Ms. Sanchez gave Bladel her portion of the proceeds of the sale, $8,554.25.[3] Despite the fact that Ms. Sanchez signed the "Allocation of Sale Proceeds" document, Bladel later informed her that none of the proceeds from the sale of the Glenmora property would be applied to the purchase of the Oberlin property. At that point, the Sanchezes vacated the Oberlin property and retained counsel.

_____

[3]Mr. Hall, who had a 50% ownership of the Glenmora property, retained the remainder of the proceeds, $8,554.25.

The Sanchezes then filed the underlying action, seeking damages, return of unlawful real estate commissions, and attorney fees. The trial court ruled in favor of the Sanchezes and awarded them $17,500.00 in damages and $4,500.00 in attorney fees. Bladel appeals.

## III.

## LAW AND DISCUSSION

### Standard of Review

The Louisiana Constitution of 1974 provides that the appellate jurisdiction of the courts of appeal extends to both law and facts. La.Const., art. 5, § 10(B). A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. *Stobart v. State, Dep't of Transp. and Dev.,* 617 So.2d 880 (La.1993). The two-part test for appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court and (2) whether the record further establishes that the finding is not manifestly erroneous. *Id.* "This test dictates that a reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." *Id.* at 882 (citation omitted).

Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or

4

objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Id.*

### Option to Purchase the Glenmora Property

Bladel argues that the trial court erred by refusing to acknowledge that Bladel held a property interest in the Glenmora property. It asserts that because it had a property interest, it was free to market and sell the property without holding a real estate license.[4] Bladel bases its ownership interest in the Glenmora property on the Option to Purchase executed by Ms. Sanchez. In support of this argument, Bladel relies on *State, Dep't of Transp. and Dev. v. Jacob*, 483 So.2d 592 (La.1986) and *Cleremont Terrace Homeowner's Ass'n v. United States*, 146 Cal.App. 3d 398 (1983). Neither of these cases supports Bladel's position before this court.

Indeed, *Jacob* does not stand for the position that an option to purchase imparts an ownership interest; rather, it asserts that a leaseholder with an unrecorded lease has the right to intervene in an expropriation matter. *Jacob,* 483 So.2d 592. Moreover, *Cleremont Terrace* is a California case which we are neither bound nor inclined to follow.

We are more concerned with Louisiana law, which clearly states that "an option to purchase does not transfer title or vest the holder of the option with rights of ownership." *E.P. Dobson, Inc. v. Perritt*, 566 So.2d 657, 660 (La.App. 2 Cir. 1990). "Until the option to purchase is exercised, the grantee has no enforceable rights as owner." *Id.*

---

[4]An individual is permitted to sell his own property without holding a real estate license. La.R.S. 37:1438.

Here, nothing in the record indicates that the Option to Purchase the Glenmora property was exercised. Because the Option was not exercised, Bladel never gained an ownership interest in the Glenmora property. Thus, Bladel needed a real estate license to market and sell the property. Bladel admitted that it does not possess a real estate license.

## Real Estate Activity

Louisiana's Real Estate License Law (the "Act") "was founded on the strong public policy to regulate the real estate business and it cannot be set aside by contract." *Towne Ctr., Ltd. v. Keyworth*, 618 So.2d 467, 470 (La.App. 4 Cir. 1993). The Act enables state regulation of real estate activity. La.R.S. 37:1430 to 1470. It empowers the Louisiana Real Estate Commission to regulate the issuance of real estate licenses, censure licensees, suspend or revoke licenses, and impose certain requirements on licensees, such as professional competency. La.R.S. 37:1435.

The Act defines the relevant terms and regulated activities as follows:

(7) "Real estate activity" means any activity relating to any portion of a real estate transaction performed for another by any person, partnership, limited liability company, association, or corporation, foreign or domestic, whether pursuant to a power of attorney or otherwise, who for a fee, commission, or other valuable consideration or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

(a) Sells, exchanges, purchases, manages, rents, or leases or negotiates the sale, exchange, purchase, rental, or leasing of real estate.

(b) Offers or attempts or agrees to negotiate the sale, exchange, purchase, management, rental, or leasing of real estate.

(c) Lists or offers or attempts or agrees to list for sale or lease any real estate or the improvement thereon.

6

(d) Buys or offers to buy, sells or offers to sell, or otherwise deals in options on real estate or the improvements thereon.

(e) Advertises or holds himself, itself, or themselves out as engaged in the business of selling, exchanging, purchasing, managing, renting, or leasing real estate.

(f) Assists or directs in the procuring of prospects or the negotiation or closing of any transaction, other than mortgage financing, which results or is calculated to result in the sale, exchange, managing, leasing, or renting of any real estate, other than a provider of information, ideas, and materials to guide homeowners in the sale of their own property.

(g) Is engaged in the business of charging an advance fee or contracting for collection of a fee in connection with any contract whereby he undertakes primarily to promote the sale, exchange, purchase, rental, or leasing of real estate through its listing in a publication issued primarily for such purpose, or for referral of information concerning such real estate to brokers, or both.

(h)(i) Sells or attempts to sell or offers or attempts to negotiate the sale of any business whose assets include real estate or leases of real estate.

(ii) Lists or offers or attempts or agrees to list for sale any business whose assets include real estate or leases of real estate.

\*\*\*

(15) "Licensee" means any person who has been issued a license by the commission to participate in any activity described in this Section.

\*\*\*

(20) "Real estate transaction" means the selling, offering for sale, buying, offering to buy, soliciting for prospective purchasers, managing, offering to manage, leasing, offering to lease, renting, or offering to rent any real estate or improvements thereon, or any business or other entity whose assets include real estate or leases of real estate.

\*\*\*

(29) "Dealing in options" means a person, firm, partnership, limited liability company, association, or corporation directly or indirectly taking, obtaining, or using an option to purchase, exchange, rent, or lease real property or any interest therein with the intent or for the purpose of buying, selling, exchanging, renting, or leasing said real property or interests therein to another or others, whether or not said option is in his name and whether or not title to said property passes through the name of said person, firm, partnership, limited liability company, association, or corporation in connection with the purchase, sale, exchange, rental, or lease of such real property in interest.

\*\*\*

(32) "Broker" or "real estate broker" means a licensed real estate broker performing activities as an individual real estate broker, a sponsoring broker or designated qualifying broker, or a corporation, partnership, or limited liability company which has been granted a real estate license through a designated qualifying broker.

La.R.S. 37:1431.

The Act requires that one obtain a license before engaging in the conduct or activities of a real estate broker. La.R.S. 37:1436. An unlicensed person violates the Act by performing even a single act for which a license is required. La.R.S. 37:1436(D). One of the few exemptions of the Act applies to individuals who are selling their own property. La.R.S. 37:1438.

By agreeing to seek a prospective purchaser for the Glenmora property—a property which Bladel did not own[5]—and actively pursuing the transaction to conclusion, Bladel was clearly in the business of real estate salesmen under La.R.S. 37:1436.[6] Further, this activity constituted a single act as described

---

[5]At the risk of unadorned repetition, an option to purchase property does not give an option holder an ownership interest in the property until that option is exercised.

[6]Indeed, Mrs. Sanchez testified that she never would have executed the documents Bladel presented to her if she had known that Bladel was not licensed as a real estate broker by the State of Louisiana.

in La.R.S. 37:1436(D). Bladel's conduct was egregious and was a scam. It is exactly the kind of conduct the Act was enacted to regulate.

## Damages

Bladel argues that its "ownership interest" in the Glenmora property permitted its retention of the proceeds from the sale of that property and that the trial court erred in ordering the return of those proceeds to the Sanchezes. We disagree. Louisiana Revised Statutes 37:1459 prohibits any person who has engaged in real estate activity without a valid license from receiving any compensation.

Bladel received compensation from both the sale of the Glenmora property and the sale of the Oberlin property. We are unable to precisely discern the specific root of the $17,500.00 damages award, but we surmise that the damages include the $9,000.00 down payment for the Oberlin property and one-half of the sales proceeds ($8,554.25) from the sale of the Glenmora property. We conclude that the record clearly supports the award of $17,500.00 in damages even though the trial court does not give us the benefit of its precise rationale for the award.[7]

## Attorney Fees

Bladel appeals the trial court's award of $4,500.00 in attorney fees. We find no merit in this contention. The record clearly supports an award of attorney fees pursuant to the UTPL. The UTPL provides in pertinent part:

> Any person who suffers any ascertainable loss of money
> or movable property, corporeal or incorporeal, as a result
> of the use or employment by another person of an unfair
> or deceptive method, act, or practice declared unlawful
> by R.S. 51:1405, may bring an action individually but not

---

[7]While it appears that a slight discrepancy exists in the actual amount of damages, we find no abuse of discretion by the trial court. Moreover, the Sanchezes failed to file an Answer seeking the additional $54.25.

in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs.

La.R.S. 51:1409(A).

Bladel's actions fall squarely within the conduct the UTPL prohibits. Bladel admits it is not, and never has been, a licensed real estate broker in this state. Bladel's flagrant engagement in real estate activity without a license is repugnant and disturbing. Bladel took advantage of vulnerable consumers to propagate a real estate scam. Here, the Sanchezes fell victim to Bladel's illegal activity, and they deserve compensation. Thus, we find no error in the trial court's award of attorney fees.

IV.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed against Appellants, Jon Phillip Bladel, Bladel Homes, L.L.C., and Bladel Enterprises, L.L.C.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. RULE 2-16.3, UNIFORM RULES—COURTS OF APPEAL.